FILED

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

'97 JUN 10 AM 9: 56

U.S. DISTRICT COURT
N.D. OF ALABAMA

VIVIAN BOYD,                          ]
                                      ]
        Plaintiff(s),                 ]
                                      ]
    vs.                               ]    CV-96-N-1564-S
                                      ]
A PLUS COMMUNICATIONS,                ]
INC. and A PLUS BEEPERS,              ]
INC.,                                 ]
                                      ]
        Defendant(s).                 ]

ENTERED

JUN 10 1997

### Memorandum of Opinion

### I.    Introduction.

Plaintiff Vivian Boyd ("Boyd") brings this state law action for malicious prosecution

against the defendants, A+ Communications, Inc. and A+ Beepers, Inc. (collectively,

"A+").[1]  Originally filed in the Circuit Court for Jefferson County, Alabama, the defendants

removed to this court on diversity grounds. The court presently has for consideration the

defendants' motion for summary judgment which has been fully briefed and is ripe for

decision.  Upon due consideration, the motion will be granted.

---

[1] Ms. Boyd originally brought claims for false arrest, malicious prosecution, invasion of privacy, false light, and slander. In her response to the defendants' motion for summary judgment, she has withdrawn all claims except the one for malicious prosecution.

## II.    Statement of Facts.[2]

At all times relevant to this action,[3] the defendants were engaged in the business of

selling cellular telephone and pager equipment and service.  They maintained a retail

office in Birmingham, Alabama, where the plaintiff began working in September 1990 as a

telemarketer.    In August 1991, she was promoted to Cellular Customer Service

Representative, reporting to Lavora Cooper.  Cooper was one of three office managers.

As part of the plaintiff's duties as a Customer Service Representative, she was responsible

for taking payments from customers who came into the office and from other A+

employees who had accepted payments from customers outside the office.  Additionally,

approximately three or four times per week, Boyd took A+ deposits to the bank.

Consistent with the usual cash handling procedures at the defendants' Birmingham

office, each employee who received a cash payment from a customer was required to give

that customer a written receipt.  The cash, along with a copy of the receipt, ultimately was

placed into a locked cash box kept on the premises at A+ and deposited at the bank on

a daily basis.  Only three people had keys to the locked cash box:  (1) the general manager

---

[2] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, the plaintiff's responses to the defendants' submission, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).  Exhibit D, the court's summary judgment scheduling order, was attached to and made part of the court's September 23, 1996, scheduling order.  Exhibit D provides that "[a]ll additional material facts set forth in the statement required of the opposing parties will be deemed to be admitted for summary judgment purposes unless controverted by the statement of the movant. *Exhibit D* at 5 (emphasis omitted).  According to Exhibit D, the defendants' reply submission was due to the court by the close of business on April 29, 1996.  They failed to reply; thus, pursuant to Exhibit D, the facts set out below include those submitted as undisputed by the plaintiff.

[3] Since the plaintiff's employment with the defendants ended, defendant A+ Communications, Inc. has undergone a corporate merger and become known as A+ Network, Inc.  A+ Network, Inc. was subsequently acquired by Metrocall, Inc. and is now known by that name.  Defendant A+ Beepers, Inc. has ceased to do business entirely.

2

of the office, Kelly Bastin; (2) the office manager, Jennifer Rogers; and (3) plaintiff's supervisor, Lavora Cooper. Boyd could and did, however, access the cash box by borrowing a supervisor's key.

A+ implemented and enforced a "last person responsible" cash handling policy that was in place throughout the plaintiff's tenure with the company. Consistent with that policy, each employee who accepted a cash payment from a customer remitted such payment to Cooper, Rogers, Bastin, or the plaintiff. The employee receiving the funds initialed the salesperson's receipt book and placed the funds and one copy of the receipt in the cash box. Boyd testified at deposition that she took cash from A+ employees and placed it in the cash box on a daily basis. *Plaintiff's Deposition* at 89. The employee who initialed the receipt then became responsible for the money. Boyd also testified that when she accepted money from a salesperson, she initialed the receipt. If she in turn remitted the cash to one of the office managers, however, she did not have that person initial the receipt as well. *Id.* at 95-96. The office manager responsible for making bank deposits removed funds from the cash box and created a handwritten cash transmittal form that accounted for the funds to be deposited. According to A+ policy, another employee who was not involved in the cash receipt function was then required to verify that the receipts agreed with the deposit slips. Cooper was generally the office manager who was responsible for making the deposits. Typically, the plaintiff did not remove funds from the lock box, make deposits, or create cash transmittal forms unless supervised by one of the managers. She testified at deposition, however, that she did perform those duties unsupervised "a couple of times." *Id.* at 256. In total, she prepared three or four cash

3

transmittal forms. She also testified that she understood her responsibility for any cash she received ended once she placed the funds in the cash box. *Id.* at 98-99.

In approximately April of 1992, the plaintiff voluntarily terminated her employment with A+. At or near the same time, A+ began an audit of the Birmingham office that was completed on September 10, 1992. Company audit procedures dictated that the auditors review all receipts and related transmittals for four weeks following the date of the receipt to ensure each receipt had been deposited into the company's bank account. If a receipt was not recorded on a cash transmittal, the auditors determined the employee last responsible for the receipt by noting the initials on the receipt. Tim Miller, an A+ employee assigned to the Nashville, Tennessee corporate office, oversaw the instant audit, and he eventually determined that more than $16,474.89 had been received by A+ employees but had never deposited in the company's bank account. Miller determined that Boyd and three other employees -- Rogers, Cheryl Fells, and Cooper -- had signed cash receipts as the "last responsible person" to have handled most of the unaccounted for funds, and that Boyd was responsible for $4,105.68 of those funds. Seven other employees had signed as the "last responsible person" for smaller amounts of missing money. Miller testified at deposition that, while conducting the audit, he did not determine the plaintiff's job position or investigate the actual cash handling procedures being followed in the Birmingham, Alabama office. *Miller Deposition* at 30. He also opined that the employee who removed the money from the cash box and prepared the cash transmittal record had the last opportunity to embezzle the funds remitted, *id.* at 33, 38, that this person was not the plaintiff, *id.* at 53, and that he did not "in the real world" know who

4

embezzled the money. *Id.* at 41. During the audit, Miller verified the preparer of the cash transmittal record for March 2, 1992, only. Miller subsequently prepared the insurance claims for the allegedly missing funds, and the defendants recovered the total claim from their insurance carrier.[4]

Miller consulted with his supervisors at A+ and met with those identified employees who still were working for the company. He then reported to the Homewood, Alabama Police Department that A+ was missing money[5] and that the plaintiff was the last person responsible for $4,105.00.[6] The Homewood Police Department then referred Miller to the Jefferson County District Attorney's Office and scheduled a meeting for him with an Assistant District Attorney in that office. Miller met with District Attorney representatives and provided information regarding the audit results.[7] The District Attorney's Office subsequently informed Miller that it had decided to prosecute the plaintiff, Rogers, Fells, and Cooper but not the other seven A+ employees.[8]

---

[4] The policy limited liability to $10,000 per employee.

[5] The parties dispute the extent of the relevant detail Miller provided the Homewood Police, whether he accused anyone of stealing the missing money, and whether he advised the Homewood Police what action to take. *Movants' Initial Submission* at 4-5; *Respondent's Initial Submission* at 2-3.

[6] Miller testified in deposition that Cooper was possibly as likely as the plaintiff to have embezzled the funds, and he could not identify any information that would cause him to suspect Boyd over Cooper. *Miller Deposition* at 43-44.

[7] The parties again dispute the extent of the audit information Miller provided and whether he accused anyone of stealing the money or advised the District Attorney's Office concerning what action to take. *Movants' Initial Submission* at 5-6; *Respondent's Initial Submission* at 3. The plaintiff further contends that Miller suppressed the fact that he had no basis upon which to believe Boyd was a more likely suspect than her coworkers. *Respondent's Initial Submission* at 3. As will be discussed later, that Mr. Miller did not tell law enforcement officials he could point to no fact implicating Boyd more strongly than other employees is immaterial.

[8] The plaintiff disputes this fact, contending it is inadmissible hearsay. The defendants do not offer it to prove the truth of the matter asserted, *see* Fed. R. Evid. 801(c); rather, they offer it to demonstrate what the District Attorney's Office told Miller. Consequently, it is not inadmissible hearsay.

5

The District Attorney's Office and the Homewood Police Department prepared criminal complaints charging Boyd and her three coworkers with "theft by deception" of money belonging to A+. Miller signed the complaints, basing his decision to do so upon the audit's revelation that these four individuals were the last persons to sign receipts for various sums of money and the decision of the district attorney. The plaintiff was arrested pursuant to the warrant on December 2, 1992, and she remained in custody for a few hours before being released on bond. She was not again arrested, jailed or imprisoned after that date. The case against Boyd was bound over to a Jefferson County grand jury, and the grand jury thereafter returned an indictment against Boyd for theft of property. Miller did not testify or appear before the grand jury and Boyd has no evidence that anyone from A+ testified before the grand jury. The District Attorney's Office contacted Miller on a few occasions to request additional information or to pose questions. On each of these occasions, Miller provided the requested information to the best of his ability.

On October 17, 1994, the State moved the court to *nolle prosse* the criminal charge against the plaintiff, a motion that was granted with prejudice. On March 29, 1996, Boyd brought the present action in state court.

## III.   Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the

6

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving

7

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor."

8

*Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion.

### A. Malicious Prosecution Claim.

The plaintiff contends that the defendants accused her of theft, caused her to be arrested and prosecuted her without probable cause. *Complaint* at 3 (unnumbered pages). The defendants argue that this claim for malicious prosecution must be dismissed because Boyd cannot prove the essential elements of that cause of action. *Movants' Initial Submission* at 1, 9. Alabama law disfavors suits for malicious prosecution. *Fina Oil and Chem. Co. v. Hood*, 621 So. 2d 253, 256 (Ala. 1993).

> "[p]ublic policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge."

*Eidson v. Olin Corp.*, 527 So. 2d 1283, 1284 (Ala. 1988)(quoting *Boothby Realty Co. v. Haygood*, 114 So. 2d 555, 559 (Ala. 1959)).

In order to establish the right to recover on a claim of malicious prosecution, the plaintiff must prove: (1) that the present defendant previously initiated a judicial proceeding against the present plaintiff; (2) it did so without probable cause; (3) with malice; (4) that the judicial proceeding was terminated in the present plaintiff's favor; and (5) that the present plaintiff was damaged as a result. *Fina*, 621 So. 2d at 256. The

9

defendants do not dispute that Boyd has satisfied elements four and five. *Movants' Initial Submission* at 10.

## 1.  Initiation of Judicial Proceeding.

One does not initiate a criminal proceeding against another by merely providing the district attorney's office with information concerning an alleged crime, while leaving the decision to prosecute entirely up to the discretion of the district attorney, who makes his own independent investigation and obtains an indictment of the plaintiff from a grand jury. *Alabama Power Co. v. Neighbors*, 402 So. 2d 958, 962 (Ala. 1981). Public policy again supports such a proposition, for citizens should be able to come forward "in good faith with information concerning a suspected crime, without fear of repercussions if the information later leads to a wrongful arrest." *Pannell v. Reynolds*, 655 So. 2d 935, 938 (Ala. 1994). By the same token, however, the concerned citizen must have "stated all material facts within his or her knowledge regarding the alleged crime." *Id.*

The evidence available to the court does not reveal precisely what Miller told law enforcement officials. What is undisputed is that he gave them the names of eleven individuals whom he believed the audit to have indicated were the last persons responsible for various sums of unaccounted for money. Miller testified in deposition, however, that he had no information that would cause him to believe the plaintiff was any more culpable than Cooper, her supervisor. The only reasonable inference to be drawn from the available evidence is that Miller simply provided the information known to him to the appropriate law enforcement officers without attempting to allocate culpability between the eleven persons whose names he provided.

10

That Miller did nothing more than provide information to police authorities and that the district attorney chose to initiate criminal prosecutions is seen in the fact that prosecutors selected four of the persons to be prosecuted, declined to prosecute seven others, and helped prepare criminal complaints for the persons to be prosecuted and requested Miller to sign them. In other words, the district attorney made the decision that Ms. Boyd would be prosecuted. She has produced no evidence of any material "fact" that was withheld from the district attorney by the defendant in this case.

### 2. Probable Cause.

Probable cause in a civil proceeding requires only that the claimant have a reasonable belief that the claim may be held valid upon adjudication. *Pannell v. Reynolds*, 655 So. 2d 935, 939 (Ala. 1994). In a criminal context, however, probable cause is defined as "'a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.'" *Id.* (quoting *Fina Oil and Chem. Co. v. Hood*, 621 So. 2d 253, (Ala. 1993). The underlying question is "'not whether the malicious prosecution plaintiff was guilty of the thing charged, but whether the malicious prosecution defendant acted in good faith of the appearance of things.'" *Fina*, 621 So. 2d at 257 (quoting *Birwood Paper Co. v. Damsky*, 229 So. 2d 514, 521 (Ala. 1969) (emphasis omitted)). The plaintiff in a malicious prosecution action bears the burden of proving "the complete absence" of probable cause. *Fina*, 621 So. 2d at 257 (quoting *Eidson v. Olin Corp*, 527 So. 2d 1283, 1285 (Ala. 1988)). If the underlying facts pertaining to a determination of probable cause are not disputed, the issue of probable cause is not a question of fact for the jury to determine, but an issue

11

of law for the court to decide. *Fina*, 621 So. 2d at 257 (referring to *Gulf States Paper Corp. v. Hawkins*, 444 So. 2d 381 (Ala. 1983)). Further, the existence of probable cause is to be ascertained in light of the facts "as they appeared when the underlying action was filed." *Fina*, 621 So. 2d at 257. The fact that the earlier proceeding was *nolle prossed* does not lead to a presumption or inference that there was not probable cause. *Alabama Power Co. v. Neighbors*, 402 So. 2d 958, 967 (Ala. 1981). To summarize, the Alabama Supreme Court has enunciated a test for determining whether there is a lack of probable cause:

> Can one or more undisputed facts be found in the record below establishing that the defendant acted in good faith on the appearance of things as they existed when suit was filed, based upon direct evidence, or upon circumstantial evidence and inferences that can reasonably be drawn therefrom? If so, then summary judgment in favor of the defendant on plaintiff's malicious prosecution count would be appropriate.

*Eidson*, 527 So. 2d at 1285-86.

A grand jury's indictment of a present plaintiff in a prior judicial proceeding is prima facie evidence of the existence of probable cause. *Whitlow v. Bruno's, Inc.*, 567 So. 2d 1235, 1237 (Ala. 1990). This defense may be overcome by showing that such indictment "'was induced by fraud, subordination, suppression of testimony, or other like misconduct of the party seeking the indictment.'" *Whitlow*, 567 So. 2d at 1238 (quoting *Lumpkin v. Cofield*, 536 So. 2d 62, 64 (Ala. 1988)). In this instance, Boyd was indicted by a grand jury. She asserts, however, that the defendant suppressed "important and relevant facts." *Respondent's Initial Submission* at 9. These facts, according to the plaintiff, included the "material fact that [Miller] had no basis which would cause him to believe that Vivian Boyd was a more likely suspect than her co-employee." *Id.* at 3.

12

As noted above, the plaintiff has produced no evidence that there was any "fact" known to the defendant that was not known to the district attorney when he made the decision to initiate the prosecution against this plaintiff. The evidence is that the Miller audit identified eleven persons who could have been responsible for the theft of money from A+. Miller identified those persons to law enforcement authorities and they made the decision to prosecute the plaintiff and three other persons.

### 3. Malice.

Malice may be shown whenever a plaintiff proves that an indictment against him or her was induced by the procurement and giving of false evidence before a grand jury. *National Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133, 140 (Ala. 1983) (indicating malice may also be inferred from the surrounding circumstances of a prosecution or by proving any motive other than "a bona fide purpose to bring the accused to punishment as a violator of the criminal law"). Of necessity, malice is "incapable of positive, direct proof," and must "be rested on inferences and deductions from facts which can be laid before a jury." *Id.* It may be inferred from a lack of probable cause. *S.S. Kresge Co. v. Ruby*, 348 So. 2d 484, 489 (Ala. 1977).

Since the plaintiff has not produced evidence from which a trier of fact would find there was no probable cause to begin the prosecution of the plaintiff, it follows that she cannot establish that the defendant acted toward her with malice.

### V. Conclusion.

In accord with the above, the court, by separate order, will enter summary judgment in favor of the defendants and against the plaintiff. Costs will be taxed against the plaintiff.

13

Done, this ___9___ of June, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

14